## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOSEPH ADENS | : | No. 12-616-2 |
| | : | |
| | : | |

## MEMORANDUM

PRATTER, J.                                                                April 25, 2022

Joseph Adens seeks compassionate release from imprisonment pursuant to 18 U.S.C. § 3582(c)(l)(A)(i) based on the risk of contracting COVID-19, his belief that he has cancer or another terminal condition, his family circumstances, and his rehabilitation efforts. The Government opposes Mr. Adens's motion because he has not been diagnosed with cancer and does not otherwise present extraordinary or compelling circumstances. The Court denies the motion.

### BACKGROUND

### I.   Mr. Adens's Motion for Compassionate Release

After four adult convictions for felony narcotics violations and firearms violations, Mr. Adens was indicted in 2013 with a range of charges related to distribution of cocaine: conspiracy to distribute five kilograms or more of cocaine and 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B); attempted possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); participating in a second drug conspiracy involving five kilograms or more of cocaine and a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(D); aiding and abetting the possession with intent to distribute

1

500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

Mr. Adens proceeded to trial but, after eight days, he pled guilty to all counts pursuant to a plea agreement with a term of 27 years of imprisonment, 10 years of supervised release, and financial penalties.  The Court imposed a concurrent term of 204 months on all counts except the firearm possession count, on which the Court imposed a consecutive term of 120 months.  This 324-month term fell below the applicable advisory guideline range.

Mr. Adens is currently serving his sentence at Federal Correctional Institution Allenwood, in its medium-security facility.  He has served approximately 112 months and has earned approximately 16 months credit for good conduct.  His earliest release date is December 2035.

Mr. Adens filed his first motion for compassionate release on August 3, 2021, which the Court denied for failure to exhaust the administrative process.  Mr. Adens then presented the required request to the FCI Allenwood warden on October 6, 2021, which the warden denied on October 16, 2021.  He seeks release based on his medical concerns including the risk of COVID-19 and his family circumstances.

## II.     The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Apr. 22, 2022). The BOP limits outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished

2

their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates. FCI Allenwood Medium currently houses 1,218 total inmates. *FCI Allenwood Medium*, Bureau of Prisons, https://www.bop.gov/locations/institutions/alm/ (last visited Apr. 22, 2022). As of April 2022, there had been 551 inmates at FCI Allenwood Medium who had tested positive for COVID-19 and none had died; no inmates presently have COVID-19. *Id.*

## LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court. 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i).

To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), in *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1) in *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n.1.[1] If the prisoner has shown an extraordinary and compelling reason to warrant a

---

[1] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence should be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

**DISCUSSION**

Mr. Adens bases his motion on his concerns about his medical conditions, his family circumstances, and his rehabilitation efforts.[2]

## I.    Mr. Adens's Medical Conditions Do Not Provide a Compelling or Extraordinary Reason

First, Mr. Adens asks for release based on his risk of contracting new variants of COVID-19 while incarcerated and his concern that he could have cancer or another terminal illness.

### A.  COVID-19 Risk

First, Mr. Adens asserts that certain conditions place him at increased risk of a severe COVID-19 infection. In particular, he states that he has a history of smoking, low white blood cell and red blood cell counts, and "very low neutrophil percentage,"[3] which, according to Mr. Adens, could be symptoms of cancer. Doc. No. 765, at 1. He has also observed blood in his stool and has received follow-up testing. He believes that his blood cell count issues could indicate that he is immunosuppressed and thus at higher risk of contracting severe COVID-19. He also takes issue with the lack of social distancing measures in his facility and low vaccine rates among staff, and expresses concern about the spread of new variants.

Mr. Adens's medical record, however, shows that he has received treatment for anemia, which has resolved, *id.* at 13, and that his red blood cell count is normal, *id.* at 77. Mr. Aden's

---

[2] Because Mr. Adens submitted a request for compassionate release with the warden of FCI-Allenwood on October 6, 2021, and the request was denied on October 16, 2021, he has exhausted his administrative remedies.

[3] Neutrophils are the most common type of white blood cells. *Neutrophils*, Cleveland Clinic (accessed Apr. 22, 2022), https://my.clevelandclinic.org/health/body/22313-neutrophils.

4

medical record provides no indication of cancer or other diseases. *Id.* According to the notes in his medical record, Mr. Adens's medical provider has explained to him that, because he has not presented "any signs or symptoms of a[n] infection," the blood test results are not "overly concerning" and there is no cause for seeing a specialist. *Id.* at 12. But Mr. Adens has been "argumentative" with staff based on opinions he has received from a family member who is a nurse. *Id.* at 12. In his reply brief, Mr. Adens asserts that he has since been referred to a gastrointestinal specialist for recurring blood in his stool.

The Centers for Disease Control has identified certain medical conditions that "may" make a person "more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 22, 2022). These conditions include being immunocompromised and a former smoker. Although he was previously diagnosed with anemia based on a low white blood cell count, Mr. Adens's medical record shows that he is not considered immunocompromised. His medical record also does not include any documentation of a smoking history. Overall, Mr. Adens's medical records show a healthy 38-year old man who is receiving follow-up care for occasional rectal bleeding.

Mr. Adens also recovered from an asymptomatic case of COVID-19 in September 2020. Mr. Adens disputes whether his COVID-19 infection was asymptomatic, as stated in his medical record. Regardless, "[a]s this Court has previously expressed, prior infection and recovery from COVID-19 . . . is not a basis for compassionate release." *United States v. McLaughlin*, No. 17-cr-121-2, 2021 WL 620958, at *5 (E.D. Pa. Feb. 17, 2021); *see also United States v. Wiltshire*, No. 11-cr-310, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020).

Additionally, Mr. Adens declined the Moderna COVID-19 vaccine in March 2021. The widespread availability of COVID-19 vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (citing *United States v. Burgard*, 857 F. App'x 254, 255 (7th Cir. 2021)). A prisoner simply cannot expect success with a "claim[ed] fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021); *see also United States v. Gonzalez Zambrano*, No. 18-cr-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."). "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Although some prisoners who are unable to receive the vaccine for medical reasons may present an extraordinary and compelling reason for release, Mr. Adens has not provided any such justification for his vaccine refusal.[4]

Lastly, Mr. Adens's generalized concerns about virus variants in the prison setting are "largely speculative" given the reported decreased severity professionally observed in the most recent variant. *United States v. Doe*, 833 F. App'x 366, 368 (3d Cir. 2020); Linsdey Wang, et al., *Comparison of Outcomes from COVID Infection in Pediatric and Adult Patients Before and After*

---

[4] The Court also notes that Mr. Adens's March 2021 vaccine refusal predates his first result showing a low white blood cell count in June 2021. As of his most recent visit, Mr. Adens's anemia has also resolved.

*the Emergence of Omicron*, medRxiv (Jan. 2, 2022).  Mr. Adens does not present a unique risk of COVID-19 infection to justify compassionate release over two years into the pandemic.

### B. Cancer Risk

Based on his blood cell count and purported smoking history, Mr. Adens is also concerned that he has cancer or another terminal condition that his BOP medical provider has not diagnosed. Terminal conditions can independently serve as a basis for compassionate release.  However, a prisoner must typically show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 app. n.1(A)(ii).

Mr. Adens does not argue that he is unable to provide self-care.  Additionally, he does not assert that he actually has a condition from which he is not expected to recover.  Rather, Mr. Adens argues that he should be released because he is concerned, based on his own research, that he needs to see a specialist "before [his] issue becomes terminal."  Doc. No. 765, at 10.  But, as he stated in his reply brief, he has obtained his requested referral to a gastrointestinal specialist for the rectal bleeding.  His medical record shows frequent testing and follow-up visits.[5]  Further, as explained by his physicians, he presents no history of infections that would cause alarm for his immune system.

Thus, it does not appear that Mr. Adens presents cancer or another terminal condition. Regardless, medical diagnosis is not the Court's province, nor should it be.  A prisoner's hypothetical concerns about the possibility of cancer do not provide a compelling or extraordinary reason for compassionate release.

---

[5] Mr. Adens appears to be a "frequent flyer" for health clinic visits, asserting a remarkably broad range of complaints over the span of his incarceration.

II.     **Mr. Adens's Family Circumstances Do Not Provide a Compelling or Extraordinary Reason**

Mr. Adens also asserts that his family circumstances justify his early release. The Sentencing Guidelines policy statement provides two family circumstances as those that may qualify as "extraordinary and compelling reasons" for release: (1) "death or incapacitation of the caregiver of the defendant's minor child or minor children" and (2) "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 app. n.1(C).

Mr. Adens asserts that his fiancé is taking care of their three children as well as her elderly grandmother, and that she needs his help. But she is not incapacitated and Mr. Adens's children do not lack a caregiver. While the Court acknowledges the difficulties that Mr. Adens's confinement has undoubtedly imposed on his family, this is a result of his own criminal activity and does not provide a unique or "extraordinary" basis for release. *See United States v. Garcia*, No. 09-cr-224-01, 2021 WL 719763, at *5 (E.D. Pa. Feb. 23, 2021) ("The Court recognizes the difficulties the COVID-19 pandemic has created for *pro se* defendant's family, but these difficulties are inherent in *pro se* defendant's incarceration during this time and are not unique to his circumstances.").

III.    **Mr. Adens's Rehabilitation Efforts Do Not Provide a Compelling or Extraordinary Reason**

Finally, Mr. Adens cites his efforts at self-improvement, his desire and readiness to return home to his family, and his belief that his sentence is "harsh." He has maintained a minimal infraction record, obtained his GED, and spent time brainstorming ideas for nonprofits.[6] But

---

[6] Mr. Adens also argues that his offenses would no longer require life imprisonment under the First Step Act, but he does not raise a challenge to the legal sufficiency of his sentence and could not, in any case, raise such a challenge through a motion for compassionate release.

"rehabilitation alone [does] not constitute an extraordinary and compelling reason" for compassionate release. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020).

Because neither his medical conditions nor family circumstances establish an extraordinary or compelling reason for Mr. Adens's release, his efforts at rehabilitation alone will not suffice. The Court applauds Mr. Adens's efforts and the time credit he has earned for good behavior, but will not further reduce his sentence by the more than 13 years remaining based on these efforts.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Adens's motion for compassionate release. An appropriate Order follows.

BY THE COURT:

GENE E/K. PRATTER
UNITED STATES DISTRICT JUDGE